UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| TIFFANY VAUGHN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 1:24-cv-00099 SEP |
| ) | |
| CITY OF SIKESTON, MO, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Before the Court is self-represented Plaintiff Tiffany Vaughn's Application to Proceed in District Court without Prepaying Fees or Costs. Doc. [2]. For the reasons set forth below, the motion will be granted. Further, after reviewing the Complaint, the Court finds that all of Plaintiffs' claims are subject to dismissal.

### LEGAL STANDARD ON INITIAL REVIEW

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, or if it fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. The Court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (court not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that, "if the essence of an allegation is discernible . . . then the district court

should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir.2004)). But even pro se complaints must "allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone*, 364 F.3d at 914-15 (federal courts not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). And "procedural rules in ordinary civil litigation" need not be "interpreted so as to excuse mistakes by those who proceed without counsel." *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### THE COMPLAINT

Plaintiff Tiffany Vaughn brings this action pursuant to 42 U.S.C. § 1983 against Defendants the City of Sikeston, the Sikeston City Council, and employees of the City, including Jonathan Douglass (City Manager), Barry Blevins (Community Development Director), and Bruce Copeland (Code Enforcement Officer). Doc. [1]. Plaintiff sues Defendants in their official capacities only. As such, Plaintiff's allegations are effectively brought against the City of Sikeston.[1] *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Plaintiff claims that she is a resident of Sikeston and that Defendants have engaged in an unlawful regulatory taking of a shed located on her property at 209 Andrea Drive in Sikeston, Missouri. Doc. [1] at 11.

Plaintiff alleges that she shares her home with her children's father, Robert Brown. *Id*. at 4. In October of 2023,[2] she and Brown decided they wanted a place for their children to do schoolwork, so she bought a prebuilt shed and had it placed on their property on cinderblocks, which raised the shed two feet off the ground. *Id*. at 4. Plaintiff claims that a review of the Sikeston City Code revealed she did not need a permit to have the shed placed on the property,

---

[1] In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.,* 172 F.3d 531, 535 (8th Cir. 1999); *see also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (official capacity suit against sheriff and his deputy "must be treated as a suit against the County"). To prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

[2] Although Plaintiff states throughout her Complaint that the events occurred in October of 2024, they actually occurred in October of 2023.

but if she wanted electricity connected to the shed, she would need a permit to do so. *Id*. Plaintiff acknowledges the shed was placed in a flood zone. *Id*.

After the shed was placed, Robert Brown contacted an electrician to obtain permits and have power connected to the shed. *Id*. The hired electrician viewed the shed with Defendant Bruce Copeland, the Code Enforcement Officer. *Id*. Plaintiff claims she was told by the electrician that Copeland indicated he had personal issues with Plaintiff and her family, and that no permit would be granted. *Id*. The electrician then purportedly stopped communicating with Brown, and Brown next hired Riley's Electric for the job. *Id*. Brown then went to speak to Bruce Copeland to address the permit issue. *Id*. Plaintiff was allegedly on the cell phone with Brown during his conversation with Copeland. *Id*. at 5. Plaintiff alleges Copeland denied having been the Code Enforcement Officer who visited the property at Andrea Drive, indicated he did not like Plaintiff's sister, and then inquired about buying the shed from Brown. *Id*. Copeland then insisted that a variance would have to be sought for the permit due to the new flood plain regulations. *Id*. Plaintiff states that she researched the matter and found that the regulations referred to by Copeland had not yet been passed by the Sikeston City Council. *Id*.

Plaintiff emailed Barry Blevins, the Community Development Director, on November 3, 2023, seeking a copy of the codes and regulations regarding placing a shed on property within a flood zone. *Id*. at 6. Plaintiff claims she attended the next Sikeston City Council meeting on November 6, 2023, and although she arrived late, she was nonetheless able to speak with both Blevins and Jonathan Douglass, the City Manager, about her shed after the meeting. *Id*. She alleges that after Blevins and Douglass reviewed pictures of the shed, Plaintiff was assured that getting the permit would no longer be an issue. *Id*. Blevins and Douglass also allegedly discussed with her the need to add an extra layer of cinder blocks in order to raise the shed to heights that comply with the flood plain ordinance. *Id*. Plaintiff allegedly told Defendants she would be able to do so. *Id*.

Plaintiff claims that she went to City Hall on November 15, 2023, and paid a $25.00 fee to receive a permit to connect power to her shed. *Id*. She asserts that in purchasing the permit, the code enforcement desk clerk handed her a signature pad and told her to sign it. *Id*. When she asked what she was signing she was told she needed to sign her name to the permit. *Id*.

Plaintiff further alleges that she attended a City Council meeting on November 27, 2023, to voice her concerns relative to the proposed FEMA flood plain regulations. *Id*. At that time,

Barry Blevins allegedly assured both Plaintiff and the City Council members that the new regulations were mere terminology changes. *Id*. at 6-7. But Plaintiff claims that her review of the new flood plain regulations led her to believe they contained substantive changes. *Id*. at 7.

On November 28, 2023, Plaintiff emailed Mayor Turnbow and the other Sikeston City Council members. *Id*. Plaintiff stated in her email that she believed there were misrepresentations made at the meeting the previous day regarding the new flood plain regulations. *Id*. She then requested that the City pause implementation of the regulations. *Id*. When Plaintiff did not receive a response to her email by January 1, 2024, she sent a follow-up email. Plaintiff received a response from Jonathan Douglass on January 2, 2024. *Id*. Douglas asserted that Plaintiff had missed a prior meeting with him to discuss the matter, and he alleged that her concerns revolved around requirements already in place in the current City of Sikeston flood plain regulations. *Id*. at 8. Plaintiff requested copies of the old and new flood plain regulations, and on January 30, 2024, Douglass provided copies to Plaintiff. *Id*.

On February 2, 2024, Plaintiff was informed by Riley Electric that Bruce Copeland, the Code Enforcement Officer, had decided she needed a variance to get electricity attached to her prebuilt shed. *Id*. When Plaintiff contacted Copeland, he had her speak to Defendant Blevins, who told Plaintiff that her shed was a proposed structure under Chapter 410 Article 4 of the Sikeston City Code and required a variance. *Id*.

On February 6, 2024, Plaintiff sent the City Council a letter with a picture showing how high off the ground her shed was lifted. *Id*. The letter also stated that she believed the City Council had passed the new FEMA flood plain regulations in violation of City Code, Article 7 Section 410.220, without giving proper notice of a public hearing. *Id*. On February 8, 2024, Jonathan Douglass responded to plaintiff by email acknowledging that the regulations had been passed without proper notice to residents. *Id*. at 9. He stated that the City would hold a new meeting to give such notice. *Id*. He also referred Plaintiff to Section 410.120 of the Code, which he said would apply to Plaintiff under both the old and new flood plain regulations:

> <u>410.120</u>. Establishment of a Floodplain Development Permit.
> A. A development permit shall be obtained before construction or development begins within any area of special flood hazard established in Article III, Section 410.060. No person, firm or corporation or unit of government shall initiate any development or substantial improvement or cause the same to be done without first obtaining a separate permit for each development.

4

Douglass then explained that even though Plaintiff's shed was a prefabricated structure "constructed" prior to plaintiff's ownership, the act of locating it on her property constituted "construction," "development," or "substantial improvement," as referred to in Section 410.120. *Id*. As a result, Douglass indicated that Plaintiff should have applied for a floodplain development permit before locating the shed in the floodplain in the first place. *Id*. Douglass went on to say that by signing the permit application Plaintiff had agreed to comply with "ALL Building Codes, Zoning, FEMA, DNR and City of Sikeston regulations and rules." *Id*.

In the February 8th letter, Douglass indicated that Plaintiff could seek approval for the electrical connection on the shed by doing one of two things: (1) by raising the lowest floor of the structure one foot above the base flood elevation in a "code compliant" manner; or by (2) applying for a variance from the Board of Adjustment.[3] *Id*. Douglass stated in his letter, however, that there was no guarantee that a variance would be approved or that it would be approved "without conditions." *Id*. at 10.

On February 9, 2024, Plaintiff responded to Douglass's letter. *Id*. She asserted that her shed should not be considered "construction or development" under the Sikeston City Ordinance and requested that her shed be exempt from City Ordinances and that an electricity hook-up be immediately approved. *Id*. In her letter, she stated that the failure of the City of Sikeston to comply with her demands would result in a lawsuit against the City. *Id*.

On February 10, 2024, Plaintiff emailed the Mayor and members of the Sikeston City Council. *Id*. In her message, she asserted a regulatory taking claim and a claim that her civil rights had been violated. *Id*. She asserted that the City owed her approximately $2,985.00 for damages for "inverse condemnation" and regulatory taking, and stated that if the City failed to respond by March 14, 2024, she would file a lawsuit. *Id*. at 17.

---

[3]According to the City of Sikeston Ordinances, the Board of Adjustment consists of five members who are appointed by the Mayor and confirmed by the City Council. The Board "has the full power to adopt all rules for the transaction of its business and the regulations of procedure before it." *See* City of Sikeston Code § 405.185. According to Sections 405.280 and 405.290, the Board of Adjustment has the ability to hear and decide appeals from decisions or determinations of the Planning and Zoning Commission or the City Council.

## DISCUSSION

### A. Plaintiff's Legal Claims

Plaintiff's legal claims in this action are somewhat difficult to discern. As noted above, plaintiff asserts only official capacity claims against the City of Sikeston pursuant to *Monell*. She brings claims for an unlawful regulatory taking in violation of the Fifth and Fourteenth Amendment. *See, e.g., Becker v. City of Hillsboro, Missouri*, 667 F.Supp.3d 996 (E.D. Mo. 2023). Additionally, she alleges that she was subjected to First Amendment retaliation when the Sikeston City Council failed to grant her an electrical permit for her shed after she "continued to question the passing of the new [flood plain regulation] by the City Council." Doc. [1] at 11. Plaintiff further claims that the individual Defendants "repeatedly lied and conspired to violate [her] rights in an attempt to silence her and her concerns of the [flood plain regulation], with complete disregard to the plaintiff's rights and to the laws of the State of Missouri." *Id*. at 12.

Plaintiff also alleges that her Fourteenth Amendment due process rights were violated when she requested assistance from the City of Sikeston relative to obtaining a permit for placing electricity in her shed and when she was misled as to what she was signing when she sought such a permit.[4] *Id*. at 9-10.

Plaintiff also appears to seek relief under two criminal statutes, 18 U.S.C. §§ 241 and 242. *Id*. at 15. Finally, though it is not entirely clear, it appears Plaintiff may also be asserting various state law claims for relief, including claims for misrepresentation or fraud, a violation of the right to privacy, and inverse condemnation. *Id*. at 13-15.

### B. Plaintiff's First Amendment Retaliation and Conspiracy Claims Brought Pursuant to 42 U.S.C. § 1983

Plaintiff brings First Amendment retaliation and conspiracy claims against the individual Defendants. Because Plaintiff has sued them in their official capacities only, the claims against the individual Defendants are actually claims against their employer, the City of Sikeston.

A municipality cannot be held liable under 42 U.S.C. § 1983 solely because it employs a tortfeasor. Rather, the City of Sikeston can be liable only if it had a "policy or custom" which caused a plaintiff to be deprived of a federal right. *L.A. Cnty. v. Humphries*, 562 U.S. 29, 32-33 (2010); *Monell,* 436 U.S. at 694.

---

[4] Plaintiff has not named the City of Sikeston permit clerk as a defendant in this action.

Plaintiff has not alleged an unlawful custom or policy of retaliating against her or other individuals in a similar position, nor has she alleged that there was a custom or policy of engaging in a conspiracy against her on behalf of the City of Sikeston. As such, Plaintiff's First Amendment retaliation and conspiracy claims under 42 U.S.C. § 1983 are dismissed.

### C. Plaintiff's Federal Regulatory Taking Claims

"The Takings Clause of the Fifth Amendment, applicable to the States though the Fourteenth Amendment . . . prohibits the government from taking private property for public use without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001) (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, (1897)). There are two types of regulatory takings recognized by the courts. The first is a per se or total regulatory taking where government regulations completely deprive an owner of all economically beneficial use of the property. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992). The second is a partial taking, which can occur when there is anything less than a complete elimination of value or total loss. *See Palazzolo*, 533 U.S. at 617. Plaintiff is alleging a partial taking in the present action.

"When a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision." *Pakdel v. City & Cnty. of San Francisco, California*, 594 U.S. 474 (2021) (citing *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 737 (1997)). Here, as more fully discussed below, there is no indication that Plaintiff's claims are ripe for adjudication.

The ripeness doctrine arises out of the Constitution's case-or-controversy requirement, as claims premised on uncertain or contingent events present justiciability problems. *Wisconsin Right of Life State Political Comm. v. Barland*, 664 F.3d 139, 148 (7th Cir. 2011); *see also* 13B Charles Alan Wright, et al., Federal Practice and Procedure § 3532 (3d ed. Supp. 2018). The doctrine's underlying objective is to avoid premature adjudication and judicial entanglement in abstract disagreements. *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 200–01 (1983).

The Supreme Court recently explained in *Pakdel* that the final decision requirement is relatively modest. All a plaintiff must show is that "there is no question . . . .about how the regulations at issue apply to the particular land" at issue. *Pakdel*, 594 U.S. at 478. This does not mean that a plaintiff must exhaust all conceivable state administrative procedures before filing

suit in federal court. *Id.* at 479. But "a plaintiff's failure to properly pursue administrative procedures may render a claim unripe if avenues still remain for the government to clarify or change its decision." *Id.* at 480. "This requirement ensures that a plaintiff has actually 'been injured by the Government's action' and is not prematurely suing over a hypothetical harm." *Id.* at 479 (quoting *Horne v. Department of Agriculture*, 569 U.S. 513, 525 (2013)). In other words, "because a plaintiff who asserts a regulatory taking must prove that the government 'regulation has gone too far,' the court must first 'kno[w] how far the regulation goes.'" *Id.* (quoting *MacDonald, Sommer & Frates v. Yolo Cnty.,* 477 U.S. 340, 348 (1986)). "Once the government is committed to a position, however, these potential ambiguities evaporate, and the dispute is ripe for judicial resolution." *Id*.

Therefore, "'a plaintiff's failure to properly pursue administrative procedures may render a claim unripe if avenues still remain for the government to clarify or change its decision,' including where the plaintiff has 'an opportunity to seek a variance.'" *74 Pinehurst LLC v. New York*, 59 F.4th 557, 565 (2d Cir. 2023) (quoting *Pakdel*, 594 U.S. 474 (2021)). A review of Section 410.150 of the City of Sikeston Ordinances indicates that Plaintiff could request a variance, and if necessary, appeal the denial of a variance to the Board of Adjustment.[5] But instead of pursuing her complaints by filing for a variance or appealing to the Board of Adjustment, as she was advised to do by Defendant Douglass, Plaintiff instead chose to file a federal lawsuit.

As the Supreme Court explained in *Pakdel,* the purpose of the finality requirement is to understand how far the regulation actually goes when the property owner claims that it is going too far. To answer that question the Court must first know that the government entity is "committed to" enforcing the regulation in the manner that is under challenge. *Pakdel,* 594 U.S. at 479. Plaintiff's bald assertion that there has been an unconstitutional regulatory taking by the City does not make her claim ripe for review, as the Court is unable to evaluate the effect of the regulation on her property until the City of Sikeston has had an opportunity to take final action on the matter. *See Morris v. United States*, 392 F.3d 1372, 1376 (Fed. Cir. 2004) ("Evaluating whether the regulations effect a taking requires knowing to a reasonable degree of certainty what limitations the agency will, pursuant to regulations, place on the property."); *see also 74*

---

[5]The City Ordinances for the City of Sikeston are available on the City's website. *See* City of Sikeston, MO Floodplain Regulations, https://ecode360.com/27666678#27666678, last visited October 30, 2024.

*Pinehurst*, 59 F.4th at 565 (finding that landlords' as applied regulatory takings claim was unripe due to the ability to seek a variance), and *Building and Realty Institute of Westchester and Putnam Counties, Inc. v. New York*, 2024 WL 1061142 (2nd Cir. March 12, 2024) (finding that appellants' regulatory takings challenges were not ripe because they had not applied for variances).

Here, instead of formally seeking a variance from the City of Sikeston or the Board of Adjustment relative to the desired electrical permit for her shed, Plaintiff seeks a Court ordered variance by filing the present lawsuit. Plaintiff is not entitled to leapfrog over those administrative hurdles prior to bringing her claims to this Court. In light of that, her regulatory taking claims are unripe and cannot be reviewed.

### D. Plaintiff's Deprivation of Rights Claims Brought Pursuant to 18 U.S.C. §§ 241-42

Plaintiff asserts that she is bringing claims against Defendants pursuant to 18 U.S.C. §§ 241 and 242. Those are criminal statutes, which do not provide a private right of action. *See U.S. v. Wadena*, 152 F.3d 831, 846 (8th Cir. 1998) ("Courts have repeatedly held that there is no private right of action under [18 U.S.C.] § 241, even though the statute allows federal authorities to pursue criminal charges"); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (only a United States prosecutor can bring a complaint under 18 U.S.C. §§ 241-242); *Storm-Eggink v. Gottfried*, 409 Fed. Appx. 426, 427 (2nd Cir. 2011) ("nothing in the language or structure of [18 U.S.C] § 241 suggests that Congress intended to create a private right of action"); *Brown v. Express Scripts*, 2018 WL 1295482, at *2 (E.D. Mo. 2018) (dismissing claim brought under 18 U.S.C. § 242 because there is no private right of action). Thus, these claims are subject to dismissal.

### E. Plaintiff's State Law Claims

Finally, Plaintiff's Complaint contains several state law claims for relief. Because the Court has determined it lacks the ability to review her federal regulatory taking claims, the Court declines to exercise supplemental jurisdiction over her related state law claims. Her state claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Proceed in District Court without Prepaying Fees or Costs, Doc. [2], is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B), as her federal claims are not yet ripe for adjudication. A separate Order of Dismissal shall accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c).

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Status Update and Hearing, Doc. [8], is **DENIED** as moot.

**IT IS FINALLY ORDERED** an appeal of this Order of Dismissal shall not be taken in good faith.

Dated this 31st day of October, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE